## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION



**DOCKETED**
DEC 0 5 2003

JANE DOE and JOHN DOE, minors by their
mother and next friend, CARLA SAULSBURY,
and CARLA SAULSBURY, an individual,

    Plaintiffs,

    v.

THE COUNTY OF KANKAKEE, a body
politic and corporate, CITY OF KANKAKEE, a
municipal corporation, KANKAKEE AREA
METROPOLITAN ENFORCEMENT GROUP, a
joint venture of municipalities and bodies politic or
an association of such entities, TIMOTHY
BUKOWSKI, in his official and personal
capacities, MICHAEL KINKADE, in his official
and personal capacities, AUSTIN BANK OF
CHICAGO, as Trustee U/T/A dated July 20, 1988
(Tr. No. 6431), CRESTVIEW VILLAGE
APARTMENTS, L.P., an Illinois limited
partnership, DONALD GREEN, in his official and
personal capacities, KENNETH MALLANDINE,
in his personal capacity, JACK JOHNSTON, in his
personal capacity, CHAD GESSNER, in his
personal capacity, PATROLMAN MARTIN, in his
personal capacity, LIEUTENANT MARCOTTE, in
his personal capacity, PERRY GROUP, LTD., an
Illinois limited partnership, TONY PERRY &
ASSOCIATES, INC., an Illinois corporation,
TONY PERRY, an individual, and OTHER
UNKNOWN PERSONS,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**03C 8786**

Civil Action No. **JUDGE AMY ST. EVE**

District Judge: **MAGISTRATE SIDNEY I. SCHENKIER**

Magistrate:

**JURY TRIAL DEMANDED**

---

## COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

NOW COME the Plaintiffs, JANE DOE and JOHN DOE two minors by their mother and

next friend, CARLA SAULSBURY, and CARLA SAULSBURY, individually, by and through their

attorney MARK W. DANIEL of RATHJE & WOODWARD, and state the following as their Complaint for Damages, Injunctive and Other Relief ("Complaint") against the Defendants THE COUNTY OF KANKAKEE, a body politic and corporate, CITY OF KANKAKEE, a municipal corporation, KANKAKEE AREA METROPOLITAN ENFORCEMENT GROUP, a joint venture of municipalities and bodies politic or an association of such entities, TIMOTHY BUKOWSKI, in his official and personal capacities, MICHAEL KINKADE, in his official and personal capacities, AUSTIN BANK OF CHICAGO, as Trustee U/T/A dated July 20, 1988 (Tr. No. 6431), CRESTVIEW VILLAGE APARTMENTS, L.P., an Illinois limited partnership, DONALD GREEN, in his official and personal capacities, KENNETH MALLANDINE, in his personal capacity, JACK JOHNSTON, in his personal capacity, CHAD GESSNER, in his personal capacity, PATROLMAN MARTIN, in his personal capacity, LIEUTENANT MARCOTTE, in his personal capacity, PERRY GROUP, LTD., an Illinois limited partnership, TONY PERRY & ASSOCIATES, INC., an Illinois corporation, TONY PERRY, an individual, and OTHER UNKNOWN PERSONS:

## INTRODUCTION

1.    This lawsuit arises from the intentional, wilful and reckless conduct of the Defendants, with the present exception of the TRUST, to deprive the Plaintiffs of their civil rights and their rights under the United States Constitution and the 1970 Illinois Constitution.

2.    Over the past three (3) years, Defendants have engaged in a concerted effort, pattern and practice, under color of law, to deprive Plaintiffs of their civil rights, culminating in an incident injuring Plaintiffs that occurred on December 4, 2002 in which two police officers pepper sprayed the Plaintiffs, invaded Plaintiffs' apartment and deprived Plaintiffs of their freedom of movement during the false arrest, use of excessive force and battery of another person.

2

3.    This Complaint states claims under the Civil Rights Act that sound in excessive force, false arrest, and fair housing violations.

4.    This Complaint also presents state claims for assault and battery, false imprisonment, trespass, intentional infliction of emotional distress and other state claims.

**PARTIES**

5.    Plaintiffs are three members of one of more than 100 families living in a collection of multiple-family apartment buildings known as Crestlane Apartment which are located on North Crestlane Drive in Kankakee, Illinois (the "Complex").

6.    JOHN DOE ("SON") and JANE DOE ("DAUGHTER") are minors and CARLA SAULSBURY ("CARLA") brings this action as their mother for them as their next friend and for her own benefit.

7.    The Defendant KANKAKEE AREA METROPOLITAN ENFORCEMENT GROUP ("KAMEG"), is a joint venture of municipalities and bodies politic or an association of municipalities and bodies politic. The members of KAMEG include the County and the City.

8.    The Defendant COUNTY OF KANKAKEE ("COUNTY") is a body politic and corporate in the State of Illinois, organized under the Illinois Counties Code and existing in Kankakee County, Illinois.

9.    The County has one TIMOTHY BUKOWSKI ("SHERIFF") as its Sheriff and the Sheriff is named in this suit personally and in his individual capacity for his conduct in determining law enforcement policy for the County and those subject to law enforcement within the corporate limits of the County. Through the SHERIFF, the County, on information and belief, has assigned one or more officers to directly serve as points of communication and authority within the

3

governmental venture or association known as KAMEG and it funds KAMEG through direct contributions of money, infrastructure and employee time and indirectly through authorizations of budgets or other financial documents that include grants from other government entities at the federal and state level that support KAMEG. SHERIFF is an individual sworn to those duties and responsibilities attendant to a sheriff and county law enforcement officer within the COUNTY's sheriff's department and he serves as one law enforcement officer in KAMEG.

10.     The Defendant CITY OF KANKAKEE ("CITY") is an Illinois municipal corporation organized under the Illinois Municipal Code and existing in Kankakee County, Illinois. The City, pursuant to ordinance, has authorized an appointed individual to act as chief and several others who act in other capacities, to determine law enforcement policy for the City and those subject to law enforcement within the corporate limits of the City. The City, on information and belief, has assigned one or more officers to directly serve as points of communication and authority within the inter-municipality organization known as KAMEG and its funds KAMEG through direct contributions of money, infrastructure and employee time and indirectly through authorizations of budgets or other financial documents that include grants from other government entities at the federal and state level that support KAMEG.

11.     The City has one MICHAEL KINKADE ("CHIEF") as its Chief of Police and Plaintiffs name the chief in his official and personal capacities.

12.     AUSTIN BANK OF CHICAGO, as Trustee U/T/A dated July 20, 1988 (Tr. No. 6431)("TRUST"), is the legal owner of the Complex.

13.     Defendant CRESTVIEW VILLAGE APARTMENTS, L.P. ("MANAGER"), is an Illinois limited partnership with operations in Inverness, Cook County, Illinois and, on information

4

and belief, remains the management/operations firm for the Complex at issue in this Complaint.

14.     MANAGER, directly or through agents, managed the apartment complex before December 4, 2002, on December 4, 2002 and after December 4, 2002.

15.     Defendant, DONALD GREEN ("MAYOR"), is the Mayor of the City and he is named in his official and personal capacities.

16.     Defendants KENNETH MALLANDINE, ZACHARY JOHNSTON, CHAD GESSNER, PATROLMAN MARTIN, LIEUTENANT MARCOTTE, PATROLMAN PASEL are all individuals who were on duty on either December 4, 2002 or January 1, 2003 when two of the incidents giving rise to the Plaintiffs assertions in the case occurred. All of them are named in their individual capacities, with only those officers not present on December 4, 2002 being excepted from the damages claim because they were not present at the time of Plaintiffs' injuries on December 4, 2002.

17.     Each defendant noted in Paragraph 11 and 16 is an individual sworn to those duties and responsibilities attendant to a police officer within the CITY's police department and who also serves as one of the officers in KAMEG.

18.     On information and belief, Defendant PERRY GROUP, LTD. ("PERRY GROUP") is an Illinois limited partnership with offices bearing a street address for its operations in Chicago, Cook County, Illinois and with a post office box in Kankakee, Kankakee County, Illinois.

19.     On information and belief, Defendant TONY PERRY & ASSOCIATES, INC. ("PERRY ASSOCIATES") is an Illinois corporation with its principal place of business in Kankakee County, Illinois. The principal owner of PERRY ASSOCIATES is TONY PERRY and PERRY ASSOCIATES, on information and belief, is a partner in the PERRY GROUP.

5

20.    Defendant TONY PERRY ("PERRY") is an individual who resides in Bourbannais, Kankakee County, Illinois.

21.    Remaining potential Defendants have not been identified by and are not known to Plaintiffs after attempting to complete a due investigation that included (a) several interviews, (b) requests under the Illinois Freedom of Information Act to which the CITY did not fully respond and (c) efforts of their counsel to obtain full *Schmidt* discovery in two criminal misdemeanor cases to identify police witnesses to events on December 4, 2002 and January 1, 2003. Plaintiffs anticipate personally naming as defendants in counts seeking damages those persons who were present at Crestlane Apartments and either contributed to or wilfully permitted the injuries to Plaintiffs on December 4, 2002. At present, Plaintiffs designate these persons as UNKNOWN DEFENDANTS.

### JURISDICTIONAL BASIS

22.    This case arises under 42 U.S.C. §§1983, 1985 and 1986 and jurisdiction lies in this Court under 28 U.S.C. §1331 and 28 U.S.C. § 1343(3).

23.    This case arises under 42 U.S.C. §§3604 and 3613 and jurisdiction lies in this Court under 28 U.S.C. §1331 and 28 U.S.C. § 1343(3).

24.    In light of the claims for which there is original federal jurisdiction as noted in Paragraphs 22-23, this Court has supplemental jurisdiction over all remaining claims in this Complaint in that they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

25.    This Court also has jurisdiction over the state law claims according to United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966).

6

## VENUE

26.    PERRY GROUP, TRUST and MANAGER are all operating entities in Cook County, Illinois and, as a result, they are deemed to reside within this district under 28 U.S.C. §1391(c).

27.    On information and belief, the real estate development business of PERRY GROUP as well as the ownership and operations conduct of TRUST and MANAGER occurred in either Chicago or Inverness in Cook County, Illinois despite the location of the Complex in Kankakee.

28.    On information and belief, the CITY, acting through its CHIEF, and the COUNTY, acting through its SHERIFF, planned and reorganized KAMEG when the CHIEF and SHERIFF met for such purpose in Chicago, Cook County, Illinois.

29.    Venue in this Court is appropriate 28 U.S.C. §1391(b).

## FACTS APPLICABLE TO ALL COUNTS

## THE CRESTLANE APARTMENT COMPLEX

30.    CARLA rents a unit at the Complex for her family which includes SON and DAUGHTER.

31.    The Complex is a multiple family development with numerous attached units in each of its several buildings.

32.    The Complex has at least three open space areas that are landscaped, a playground, parking areas, and common stairwell, meeting, laundry and hallway areas.

33.    The Complex is the host of several renters or tenants, including Plaintiffs, that regularly invite friends and family to the Complex.

34.    The numerous renters and tenants also congregate, together and with friends and family, in the common areas noted in Paragraph 32 for lawful purposes of association.

7

35.    On information and belief, the vast majority Complex's several renters and tenants are program beneficiaries that receive support from the United States Department of Housing and Urban Development.

36.    The majority of renters and tenants, as well as their families and guests, are African-Americans by appearance and by blood.

37.    On information and belief, the TRUST, through its and MANAGER, duly executed the Kankakee City Police Department Agency Agreement which is attached hereto as Exhibit "A".

**FACTS APPLICABLE TO KAMEG AND ITS POLICIES AND PRACTICES**

38.    On information and belief, KAMEG has the eradication of the drug trade and inter-jurisdictional crime as its primary governmental purpose.

39.    On information and belief, KAMEG has adopted other purposes reflected through official policies and procedures which include:

a.    the unlawful application of loitering and criminal trespass laws to the residents and guests of residents of low-income housing complexes, affordable housing units and rental units, including the Complex;

b.    the unlawful prohibition of loitering for lawful purposes solely in relation to the residents and guests of residents of low-income housing complexes, affordable housing units and rental units, including the Complex;

c.    the unlawful effectuation of several open and public arrests and detentions without probable cause or warrant in relation to the residents and guests of residents of low-income housing complexes, affordable housing units and rental units, including the Complex;

8

d.   the unlawful use of excessive force in making arrests of residents and invitees of residents and guests of residents of low-income housing complexes, affordable housing units and rental units, including the Complex;

e.   the use of surveillance and other policing tactics that serve to deprive and that have deprived Plaintiffs of the benefits of parenting and childhood such as the use of common areas such as a hallway between Plaintiffs unit and the unit of the babysitter, a playground and a grass common area as a result of Plaintiffs' rational fear of personal abuse and intent to avoid the same.

f.   continuation of the purposes and polices in "d" and "e" in an effort to intimidate witnesses to the daily occurrences involving KAMEG, COUNTY and CITY operations in the Complex from exercising their rights to associate, communicate and petition the courts or their elected officials for redress of grievances.

40.   The purposes, policies and practices noted in Paragraph 39 are uniform and of a longstanding practice.

41.   In part, these policies and practices also arise from or have found their place in the Agency Agreement between TRUST or MANAGER and the CITY (and, indirectly KAMEG).

42.   These policies and practices have also evolved from the force so excessive as the use of firearms by police while in common grassy areas where Plaintiffs congregated and played previously, the beating of a man known to Plaintiffs while in handcuffs and the beating of another man known to Plaintiffs into a state of unconsciousness while on the landing where Plaintiffs congregate and play from time to time.

43.     These policies and practices have also included the intent to display excessive force in order to apply pressure to individuals who are residents and guests of residents into consenting to unannounced police searches of their persons and their residences without warrant or lawful probable cause to do so.

44.     These policies and practices have led to numerous searches and attempted searches of units in a random fashion in an effort to intimidate and coerce residents of the Complex in which Plaintiff resides into submitting to the desires of police in their operations at the Complex.

45.     Despite opposition expressed by an employee of an agent for MANAGER, the CITY and KAMEG continued these policies and practices.

46.     Despite their knowledge of the problems encountered by and the objections expressed by an employee of an agent for MANAGER, TRUST and MANAGER did nothing to curb the actions of the CITY and KAMEG and TRUST and MANAGER permitted the Agency Agreement to remain in effect with no interruption or termination.

47.     These policies and practices mentioned in Paragraphs 39-44, on information and belief, are also the policies of the CITY, MAYOR, CHIEF, COUNTY, SHERIFF and officers on duty and acting at the Complex in behalf of KAMEG.

48.     CITY and COUNTY wish not to permit housing for tenants subsidized by the United States Department of Housing and Urban Development at the northeast quadrant of the intersection of Interstate 57 and Court Street (Illinois Route 17) where the Complex is located adjacent and proximate to in excess of 100 acres of prime land owned by PERRY GROUP targeted for redevelopment by PERRY GROUP, PERRY ASSOCIATES, PERRY, the CITY and the MAYOR.

49.     On information and belief, the policies and practices of the Defendants have resulted

from their expressed support of a real estate redevelopment project on land owned, operated or under contract to an entity controlled by PERRY, PERRY ASSOCIATES and PERRY GROUP.

### THE KANKAKEE CITY POLICE DEPARTMENT AGENCY AGREEMENT

50.　　The CITY has adopted the policies and practices of KAMEG though the following actions:

　　　　a.　　on information and belief, the CITY authorized its police chief to execute the Agency Agreement with the TRUST and MANAGER, as well as the owners or operators of more than 1,000 other rental addresses in the CITY, and the police chief has executed such agreement;

　　　　b.　　on information and belief, the CITY has directed it police chief to closely supervise and reward officers on its police force who have responsibility for police activities in the Complex for the number of their arrests made in the Complex;

　　　　c.　　on information and belief, the CITY and CHIEF have assigned specific duties to officers who participate in KAMEG which has, as one of its purposes, the conduct of unlawful searches and seizures, false arrests and arrests with excessive force;

　　　　d.　　on information and belief, the CITY and CHIEF have hired and promoted to management within the CITY police force's ranks individual police officers who have a history involving the use of excessive force and done so despite the CITY's and CHIEF's knowledge of such history;

　　　　e.　　on information and belief, the CITY has hired and promoted an individual

11

who has, as part of his official duties, created a system of reporting law enforcement incidents but continued to permit individual officers involved in arrests at the complex to file late, untimely and false reports;

f.    on information and belief, the CITY has hired and promoted an individual who has, as part of his official duties, supervised the cleansing of police reports in violation of the rights of criminal defendants, including the individual in the altercation which is the subject of Count One and Count Two;

g.    on information and belief, the CITY determined not to attempt sufficient training of its officers in the areas of race relations, relations to residents of federally-subsidized housing, loitering laws, trespassing laws and the effectuation of lawful arrests without the unlawful excessive use of force; and

h.    on information and belief, the CITY's corporate authorities voted to censure or attempted to censure an alderman in the CITY for his actions to confirm reports of excessive force, unlawful stops and searches and brutality by CITY police and officers within KAMEG.

51.    The acts and decisions of the CITY's corporate authorities, the CHIEF, the management employees of the CITY police department and CITY police officers serving as the point of communication for KAMEG represent the municipal policy of the CITY.

52.    The pattern of excessive force in the Complex and elsewhere in Kankakee was known within and without the CITY and the COUNTY.

12

## COUNT ONE–42 U.S.C. §1983 EXCESSIVE FORCE

(Children vs. KAMEG, City, County, Chief, Officers Present on December 4, 2002)

1-52.    Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 52 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 1 through Paragraph 52 of this Count One.

53.    Since no later than January 1, 2000, the following principles were clearly established:

a.    The use of force against SON and DAUGHTER, including the release of pepper spray to disburse children and young adults assembled in a group for lawful purposes on a common area on private property, was excessive;

b.    The use of force against SON, including the forcible removal of an individual from a hallway in an apartment complex into a private apartment in said complex, particularly when that individual was neither a resident nor an invitee of the resident of the private apartment, was excessive;

c.    The use of force, including but not limited to the use of pepper spray, prevention of the DAUGHTER from re-entering her apartment and rude and accusatory remarks causing her to feel restrained in her movement and ability to return to her apartment, was excessive;

d.    The past, present and future enforcement of trespass and loitering laws against Plaintiffs to disburse gatherings for purely lawful purposes was and remains prohibited under the United States Constitution and the 1970 Illinois Constitution;

e.    The use of pepper spray and violence including beating a man until he was

13

bleeding and unconscious before throwing him down a stairway in the presence of SON and DAUGHTER, in responding to an inquiry from an unidentified man, was excessive;

f.     The use of pepper spray and violence to keep SON and DAUGHTER away from the a point either safely entering or remaining in their apartment or a point from which they observed unlawful police activity was excessive and constituted a deprivation of due process as well as an unlawful seizure of the persons so kept away;

g.     The service of a warrant on a non-violent man who was merely an invitee to the apartment of the babysitter for SON and DAUGHTER in a fashion that included the use of pepper spray and violence including beating a man in the presence of SON and DAUGHTER until he was bleeding and unconscious before police threw him down a stairway, in responding to an inquiry from the man who had yet to be identified to police, was excessive;

h.     The use of compelled random searches of minority individuals such as Plaintiffs under continuing threat of violent and physical reprisals such as the use of pepper spray, the use of hand violence to the point of unconsciousness and beating arrested persons in handcuffs violates the rights of Plaintiffs and others to be free of unlawful searches and seizures;

i.     The conspiracy of the police with the PERRY GROUP and PERRY to accomplish the activities noted in subparagraph (a) through subparagraph (h) is unconstitutional;

14

j.     The use of overbearing, unlawful, violent and unconstitutional activities of the police noted in subparagraph (a) through subparagraph (i) in order to force the eviction of broad classes of people living in public housing complexes and, simultaneously, to further a private developer's interest in redeveloping surrounding commercial and industrial real estate was unconstitutional;

k.     The use of pressure from the CITY and the COUNTY in the form of discriminatory and arbitrary enforcement of its zoning and building code regulations against the Complex owner in order to coerce "agency agreements" delegating to police powers they would not otherwise have was unconstitutional as to third parties not bound to the "agency agreements" by contract or otherwise;

l.     The use of force, arrest, search and seizure based upon any agreement purporting to expand powers of the police to control tenants and their guests in the Complex beyond the powers they possess under federal and state law was and is unconstitutional; and

m.     The use of force, arrest, search and seizure based upon any agreement attempting to delegate powers over third persons that the owner of the Complex did not have and purporting to expand powers of the police to control tenants and their guests in the Complex beyond the powers they possess under federal and state law was and is unconstitutional.

54.     On December 4, 2002, DAUGHTER was situated in the landing of the front entrance

15

doorway to the building in which her apartment was located.

55.     On this date and proximate to the time when DAUGHTER was located in the front entry hallway, she was also located in the hallway located one flight of stairs above the entry hallway and located between her apartment and another apartment where DAUGHTER and SON played.

56.     On December 4, 2002, SON was also located in the hallway located one flight of stairs above the entry hallway and located between her apartment and another apartment where DAUGHTER and SON played.

57.     On this date and at the time of approximately 8:00 p.m., SON, DAUGHTER and others located in the hallway were engaged in lawful conduct among close friends and family.

58.     On December 4, 2002, SON and DAUGHTER observed KAMEG officers enter the building where Plaintiff resided via the back entrance and ascend the stairway where they confronted at least three persons and told them they could not remain in the hallway.

59.     On December 4, 2002, SON and DAUGHTER observed the officers attack a man they knew as a guest after he attempted to produce identification for the officers.

60.     During the attack, DAUGHTER was threatened with the use of force if she did not remain on the front stairwell.

61.     Following the officers' direction to remain on the front stairwell, at least one of the officers discharged pepper spray that formed a mist in DAUGHTER's vicinity and that injured her eyes, caused her to stumble and encounter breathing difficulties.

62.     SON observed the pepper spray and was forced in his apartment from the hallway where he was located, along with older man who did not live in his apartment. In order to avoid a more severe impact from the pepper spray, SON left the hallway, but continued to observe police

16

officers kicking and punching the man SON knew, pushing the man down the stairs, ripping the man's braids out of his hair, handcuffing the man and beating him while he was in handcuffs.

63. DAUGHTER and SON suffered some burning in their eyes and nose.

64. DAUGHTER and SON suffered pain and suffering and severe emotional distress.

65. DAUGHTER suffered effects that impacted her relations with friends and in school as a result of the incident.

66. SON and DAUGHTER often struggle to find security in their home and in KAMEG officers as a result of the incident.

67. During the December 4, 2002 incident, the involved officers sprayed pepper spray in the presence of SON and DAUGHTER, deprived DAUGHTER of her freedom of movement and forced DAUGHTER to remain in harm's way and to observe the terrible beating of an individual rather than allow her to return to her own apartment–the same apartment into which officers had thrown an older black male who was unidentified to SON and DAUGHTER prior to December 4, 2002 and who was reeling from the stream of pepper spray and the blunt force of KAMEG officers who threw him against furniture in Plaintiffs' apartment.

68. As a result of the spraying of pepper spray by at least one officer, and as a result of their observation of a beating in their immediate presence by KAMEG officers of the man SON and DAUGHTER knew, SON and DAUGHTER suffered severe emotional distress at the time of the incident on December 4, 2002 and the two continue to suffer this emotional distress which includes increased shyness, enhanced timidity and flashbacks.

69. On December 4, 2002, SON and DAUGHTER suffered physical, physiological and psychological injury as a result of the Defendants' use of excessive force in arresting an individual

17

outside of the apartment where they reside with their mother.

70.    The CITY, KAMEG and officers present on December 4, 2002 used excessive force in forcing DAUGHTER, a known minor bystander within the foreseeable zone of harm, to remain outside of her home, by using pepper spray to cause DAUGHTER to encounter vision, nasal and respiratory problems and by severely beating a man known to DAUGHTER in her immediate presence.

71.    The CITY, KAMEG and officers present on December 4, 2002 used excessive force in forcing SON, a known minor bystander within the foreseeable zone of harm, to remain inside his home with a man he did not know, by using pepper spray to cause SON to nasal and respiratory problems and by severely beating a man known to SON in his immediate presence.

WHEREFORE, the Plaintiffs SON and DAUGHTER, through CARLA SAULSBURY, as their next friend and for the benefit of her minor children, respectfully requests that this Honorable Court enter a judgment against the CITY, COUNTY, CHIEF, KAMEG and officers MARTIN, MALLANDINE, PASEL and MARCOTTE as well as the UNKNOWN OFFICERS providing as follows:

A.    Enjoining the CITY, COUNTY, KAMEG as well as their officers from taking or omitting any action in an effort to retaliate against Plaintiffs or any other person in their family for filing this suit;

B.    Enjoining the CITY, COUNTY and KAMEG as well as their officers from conducting the ongoing stops and searches (pat-down, interrogations and unit entries) without warrant and without probable cause;

C.    Enjoining the CITY, COUNTY and KAMEG as well as their officers from entering

18

upon common areas other than paved parking surface with their vehicles;

D.    Mandatorily imposing upon the CHIEF, OFFICERS, CITY, COUNTY and KAMEG training, education and other requirements with the goal of enhancing the knowledge of racial matters and relations and betting the skills of officers within CITY and COUNTY law enforcement relating to interracial cooperation;

E.    Compensatory damages, paid to SON and DAUGHTER by the CITY, MAYOR, CHIEF, KAMEG and listed officers in a reasonable amount which the trier of fact deems sufficient to compensate SON and DAUGHTER for their respective injuries;

F.    Punitive damages paid to SON and DAUGHTER by the CITY, MAYOR, CHIEF, KAMEG and listed officers in a reasonable amount which the trier of fact deems sufficient to deter future illegal conduct;

G.    Punitive damages paid to SON and DAUGHTER by MAYOR, CHIEF and the Listed officers in their personal capacities in a reasonable amount which the trier of fact deems sufficient to deter the conduct of these individuals; and

H.    Payment by the CITY, MAYOR, KAMEG, CHIEF and listed officers of Plaintiffs' attorneys' fees, witness fees and costs of this action, in an amount to be set forth in an affidavit from the attorney(s) for Plaintiffs at the conclusion of this matter.

## COUNT TWO–42 U.S.C. §1983 FALSE ARREST

(Children vs. KAMEG, City, County, Chief, Officers Present on December 4, 2002)

1-71.    Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 71 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 1 through Paragraph 71 of this Count Two.

72. Since no later than January 1, 2000, the following principles were clearly established:

    a.    without warrant or probable cause to do so, police could not restrict the liberties of an individual through arrest; and

    b.    preventing individuals from observing police misconduct is not a justification for detaining or controlling personal freedom of movement.

73. DAUGHTER was falsely arrested on December 4, 2002 in that CITY and KAMEG officers present informed her that she could not return to her hallway, that she could not return to her unit and that she had to remain on the landing just below where CITY and KAMEG officers release pepper spray.

74. DAUGHTER was not free to depart and she reasonably understood that she might be subject to the brutal abusive behavior of CITY and KAMEG officers if she did not follow their direction to remain on the landing.

75. SON was falsely arrested on December 4, 2002 in that CITY and KAMEG officers present informed him that he must remain in his home with a stranger police detained then pushed into the SON's unit, that he could not leave his unit and that he had to remain behind a closed door to his unit–doing so only after CITY and KAMEG officers release pepper spray immediately outside Plaintiffs' unit.

76. SON was not free to depart and he reasonably understood that he might be subject to the brutal abusive behavior of CITY and KAMEG officers if he did not follow their direction to remain in the unit with the stranger forced into the unit by the officers.

77. On December 4, 2002, neither SON nor DAUGHTER were under any criminal suspicion whatsoever.

78. SON and DAUGHTER were in reasonable fear of their own security and lives due to the conduct of the officers present on December 4, 2002 and they followed the officers' every command, leaving them subject to harm during a detention without lawful purpose, probable cause or warrant.

WHEREFORE, the Plaintiffs SON and DAUGHTER, through CARLA SAULSBURY as their next friend and for the benefit of her minor children, respectfully requests that this Honorable Court enter a judgment against the CITY, COUNTY, CHIEF, KAMEG and officers MARTIN, MALLANDINE, PASEL and MARCOTTE as well as the UNKNOWN OFFICERS providing as follows:

A. Enjoining the CITY, COUNTY, KAMEG as well as their officers from taking or omitting any action in an effort to retaliate against Plaintiffs or any other person in their family for filing this suit;

B. Enjoining the CITY, COUNTY and KAMEG as well as their officers from conducting the ongoing stops and searches (pat-down, interrogations and unit entries) without warrant and without probable cause;

C. Enjoining the CITY, COUNTY and KAMEG as well as their officers from entering upon common areas other than paved parking surface with their vehicles;

D. Mandatorily imposing upon the CHIEF, OFFICER, CITY, COUNTY and KAMEG training, education and other requirements with the goal of enhancing the knowledge of racial matters and relations and betting the skills of officers within CITY and COUNTY law enforcement relating to interracial cooperation;

E. Compensatory damages, paid to SON and DAUGHTER by the CITY, MAYOR,

KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to compensate SON and DAUGHTER for their respective injuries;

F.   Punitive damages paid to SON and DAUGHTER by the CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to deter future illegal conduct;

G.   Punitive damages paid to SON and DAUGHTER by MAYOR, CHIEF and the listed officers in their personal capacities in a reasonable amount which the trier of fact deems sufficient to deter the conduct of these individuals; and

H.   Payment by the CITY, MAYOR, KAMEG, CHIEF and listed officers of Plaintiffs' attorneys' fees, witness fees and costs of this action, in an amount to be set forth in an affidavit from the attorney(s) for Plaintiffs at the conclusion of this matter.

**COUNT THREE–42 U.S.C. §3604 (DISCRIMINATION IN RENTAL HOUSING)**

79.   Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 71 of this Complaint as though the same allegations were restated and repeated verbatim in this Paragraph 79 of this Count Three.

80.   After the acceptance of CARLA's bona fide offer to rent and the execution of a lease, TRUST and MANAGER refused rent or to refused to negotiate for the rental of her unit without the burdensome obligations imposed by the Kankakee Police Department Agency Agreement which was not disclosed to CARLA when she leased her unit from TRUST and MANAGER. TRUST and MANAGER have made no effort to remove the Complex from the scope of the Agency Agreement or to otherwise terminate the Agency Agreement.

81.   After CARLA leased her family's unit at the Complex, the TRUST and the

22

MANAGER made unavailable the full and beneficial enjoyment of CARLA's dwelling to CARLA by transferring the CITY and KAMEG all authority of the TRUST and MANAGER to control persons on the Complex premises if they were guests of CARLA's or CARLA's family members.

82. On information and belief, the Agency Agreement authorizes the CITY as well as KAMEG (to the extent it operates in the CITY) to detain, seize and arrest trespassers in a fashion that (a) permits the CITY to exercise some purported authority to search and seize persons gathering for lawful purposes and (b) file trespass charges against persons who were never barred by the property owners.

83. On information and belief, the owners of more than 1,000 rental properties located in Kankakee executed the Agency Agreement in substantially the same form reflected in Exhibit "A", attached hereto.

84. The CITY has utilized its purported authority under the Agency Agreement to detain, interrogate and search hundreds of minorities in Kankakee and dozens of minorities at the Complex, including parties outside CARLA's unit on December 4, 2002 and in front of her building on January 1, 2003–both stops occurring during completely protected gatherings for lawful purposes among friends and relatives with a one or more guests of tenants at the Complex.

85. In reference to these two incidents, the police reports proclaim that the officers involved stopped the victims of their actions for suspicion of loitering, thus providing a pattern of conduct prohibited by the United States Supreme Court in City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67, (1999).

86. On information and belief, the CITY, COUNTY, KAMEG and their respective police officers, including but not limited to those named in this Complaint received a mandate from the

Chief and Sheriff as well as the Mayor to "clean up" the areas subject to Agency Agreements through the use of aggressive police tactics including the loitering interrogations, stops and searches.

87.     The refusal noted in Paragraphs 80 and the denial of enjoyment noted in Paragraph 81 by reason of the Agency Agreement continues the pattern and practice of the CITY, COUNTY and KAMEG as well as the practice of the Named Officers to control the free movement of persons who never authorized the Agency Agreement, tenants of the rental units and guests of tenants of the rental units.

88.     The policy, pattern and practice is discriminatory on the basis of race because the rental units which are the subject of the Agency Agreement are occupied primarily by persons who occupy a position of racial minority, who are not of a Caucasian, who are more likely than not single or single mothers or of a foreign national origin.

89.     The CITY, COUNTY and KAMEG, by acting pursuant to the grant of purported authority under the Agency Agreement have discriminated against persons including Plaintiffs in adopting draconian tactics of surveillance, enforcement of unwritten loitering laws and unannounced unit searches at the Complex and by otherwise denying rental unit occupants (including Plaintiffs) the same terms, conditions, or privileges of rental of a dwelling as are available to the racial majority or Caucasians in their ownership or rental of property.

90.     The CITY, COUNTY and KAMEG have denied Plaintiffs, among numerous other tenants in the CITY, of services or facilities in connection with their rental units because, like Plaintiffs, renters lose the use of common hallway areas, playground areas, parking areas, gathering areas and open space as a result of the draconian enforcement of the Agency Agreement.

91.     The loss of these rights arises solely on the basis of race, color, and national origin

24

because such tactics have not been common in neighborhoods occupied by owners or renters that are in the racial majority or Caucasian.

92.    The Complex and its tenants, including Plaintiffs, as well as their guests, including Plaintiffs' guests, enjoy and benefit from protection under the Fair Housing Act, 42 U.S.C. §3601 *et seq.*

93.    Plaintiffs are "aggrieved persons" under the Fair Housing Act, 42 U.S.C. §3602, since each claims to have been injured by a discriminatory housing practice and each believes that such person will be injured by a discriminatory housing practice that is about to occur.

94.    The concerted effort violated the Plaintiffs' rights under the 42 U.S.C. §§3604, 3617.

95.    The criminal sanction to interference or retaliation for the exercise of fair housing privileges under 42 U.S.C. §3631 creates a personal right of action in Plaintiffs.

96.    Plaintiffs are not only within the core group of persons Congress sought to protect in enacting the criminal legislation, but Plaintiffs also suffered injury as a direct result of conduct Congress anticipated would cause the injuries addressed in this Court.

97.    On a daily basis, Plaintiffs confront the issue of KAMEG presence at the Complex for the purposes of enforcing a loitering prohibition against tenants and guests of tenant, including but limited to SON's forced evacuation from a building where he was waiting on a playmate.

98.    KAMEG's actions on December 4, 2002, are a part of a lengthy pattern and practice that involved warrantless stops and searches by KAMEG officers in the complete absence of any probable cause.

99.    On December 4, 2002, the attack on the man known to Plaintiffs began with a KAMEG request for identification from two people who were simply departing from a unit in the Complex.

25

100.    The police attacked both men with pepper spray and physical force and attacked one of the men severely through a beating that inflicted a head injury and left the victim unconscious as he was pushed or thrown down stairs.

101.    Plaintiffs were never the subject of any inquiry on the night of the arrests, have never committed a crime and have never been suspected of committing any crime.

102.    Nonetheless, Plaintiffs remain subject to KAMEG's constant forced movement of Plaintiffs from one building to the next despite their presence as invitees and tenants.

103.    Plaintiffs' guests also remain subject to the same policies and actions of the KAMEG officers.

104.    Plaintiffs have suffered embarrassment and humiliation as a result of the stigma associated with the constant threats of a search or seizure of their persons by KAMEG police.

105.    Plaintiffs do not enjoy the common areas of the Complex as they once did.

106.    Plaintiffs do not wish to subject friends and relatives to the acts and policies of KAMEG officers and the CITY and, therefore, they alter their living plans so as not to invite guests to their home without enduring a humiliating explanation of what to watch for if KAMEG officers are present.

WHEREFORE, the Plaintiffs SON and DAUGHTER through CARLA SAULSBURY, as their next friend and for the benefit of her minor children, and CARLA SAULSBURY respectfully requests that this Honorable Court enter a judgment against the CITY, COUNTY, CHIEF, KAMEG and officers MARTIN, MALLANDINE, PASEL and MARCOTTE as well as the UNKNOWN OFFICERS providing as follows:

A.    Enjoining the CITY, COUNTY, KAMEG as well as their officers from taking or

omitting any action in an effort to retaliate against Plaintiffs or any other person in their family for filing this suit;

B.  Enjoining the CITY, COUNTY and KAMEG as well as their officers from acting pursuant to the Agency Agreement and acting pursuant to any revision of such agreement without receiving the advance approval of this Court;

C.  Enjoining the CITY, COUNTY and KAMEG as well as their officers from conducting the ongoing stops and searches (pat-down, interrogations and unit entries) without warrant and without probable cause;

D.  Enjoining the CITY, COUNTY and KAMEG as well as their officers from entering upon common areas other than paved parking surface with their vehicles;

E.  Mandatorily imposing upon the CHIEF, OFFICER, CITY, COUNTY and KAMEG training, education and other requirements with the goal of enhancing the knowledge of racial matters and relations and betting the skills of officers within CITY and COUNTY law enforcement relating to interracial cooperation, including but not limited to a requirement that the CITY, COUNTY and KAMEG law enforcement agencies obtain certification from a recognized and reliable law enforcement certification organization such as CALEA;

F.  Compensatory damages, paid to Plaintiffs by the CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to compensate SON and DAUGHTER for their respective injuries;

F.  Punitive damages paid to Plaintiffs by the CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to deter

future illegal conduct;

G.     Punitive damages paid to Plaintiffs by MAYOR, CHIEF and the listed officers in their personal capacities in a reasonable amount which the trier of fact deems sufficient to deter the conduct of these individuals; and

H.     Payment by the COUNTY, CITY, MAYOR, KAMEG, CHIEF and listed officers of Plaintiffs' attorneys' fees, witness fees and costs of this action, in an amount to be set forth in an affidavit from the attorney(s) for Plaintiffs at the conclusion of this matter.

**COUNT FOUR–42 U.S.C. §1986 NEGLECT TO PREVENT VIOLATION**

(Children v. MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG)

1-106.   Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 106 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 1 through Paragraph 106 of this Count Four.

107.     The MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG all possessed knowledge of the abuses of constitutional rights and the use of excessive force at the Complex.

108.    Notwithstanding such knowledge, the elected alderpersons and the MAYOR censured or attempted to censure a member of the CITY's corporate authorities who was openly critical of KAMEG and its abuse of rights and use of excessive force.

109.     The CITY also defended a suit whereby the TRUST and MANAGER claimed that they were the subjects of targeted and uneven enforcement of zoning and building code regulations and whereby the TRUST and MANAGER alleged a conspiracy to discriminate against the TRUST and MANAGER due to their operation of a federally supported housing opportunity for lower-

income residents who were primarily African-American by appearance and by blood.

110. The MAYOR, CHIEF and SHERIFF had knowledge of the wrongs conspired to be done through KAMEG, including but not limited to the use of excessive force and unlawful stops and seizures that were clearly illegal under City of Chicago v. Morales.

111. The MAYOR, CITY and individual police officers present on December 4, 2002 and again on January 1, 2003 had knowledge of the wrongs to be committed, including particularly Patrolman Mallandine who not only used excessive force upon and battered SON and DAUGHTER but who also falsely advised a CITY police officer to arrest a guest of another tenant at the Complex.

112. The MAYOR had knowledge of the conspiracy between the CITY and PERRY GROUP as a result of the City's extensive negotiations and agreements in relation to inclusion of roughly 105 acres of land owned or controlled by PERRY GROUP in a tax increment financing district approved by the CITY and in effect presently.

113. The violations through concerted action and mentioned in 42 U.S.C. §1985 were known to have been committed and the CITY, MAYOR, CHIEF, COUNTY, SHERIFF and KAMEG all knew such violations would occur again due to the consistency in training deficiencies in the CITY, COUNTY and at KAMEG.

114. The MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG all possessed the power and authority to prevent or to aid in preventing the commission of the violations through concerted action and mentioned in 42 U.S.C. §1985.

115. The MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG all neglected or refused to intervene and prevent or aid in the preventing of the commission of further violations.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter judgment

29

in their favor and against each defendant individually in the amount of the sum of all damages caused by such wrongful act, which such person by reasonable diligence could have prevented plus costs and attorneys fees allowable under federal statute (42 U.S.C. §1988).

## COUNT FIVE–42 U.S.C. §1985 CONSPIRACY

1-115.  Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 115 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 1 through Paragraph 115 of this Count Five.

116.    SON and DAUGHTER witnessed a brutal use of excessive force by the CITY's police as they were on duty within the scope of the agreement between KAMEG and the CITY, among other government agencies.

117.    There is no reason and no constitutional support whatsoever for pushing or throwing an unconscious arrestee down the stairs or to slam the arrestees head into a wall.

118.    The nature of the beating and the expansion of the attack by the police into Plaintiffs' unit was only intended to operate as an example to persons not involved that they should not question or challenge KAMEG.

119.    The events before and after the December 4, 2002 beating establish a pattern and practice of random warrantless searches without probable cause.

120.    The events before and after the December 4, 2002 beating establish a pattern and practice of systematic enforcement of unwritten loitering rules and the treatment of tenants and their guests at the Complex as prisoners in their own homes and common areas.

121.    The CITY has conspired with KAMEG, the COUNTY, the SHERIFF and individual officers to deter witnesses from coming forward to provide information in relation to the trial of the

criminal misdemeanor charges against the beaten man.

122. The deterrence arises from such use of force as was apparent on December 4, 2002 and the intimidation or threat of the use of force inherent in the continuing stops, seizures and searches that oppress Complex tenants and guests of tenants, including Plaintiffs.

123. The purpose of the deterrence is to dissuade, under compulsion, tenants and guests of tenants from participating in and attending criminal hearings and trials in Kankakee County and to deter people from testifying to any matter pending therein, freely, fully, and truthfully.

124. PERRY GROUP owns or has contracted for brokerage or ownership of approximately one hundred acres of land located adjacent to the Complex and located in Kankakee County.

125. Specifically, PERRY GROUP owns and leases or attempts to lease or sell in excess of 100,000 s.f. of industrial warehouse space on Eastgate Industrial Parkway in Kankakee and in excess of 100 acres located in the Eastgate Industrial Park. The Eastgate Industrial Park is adjacent to the Complex.

126. The Defendant TONY PERRY is an individual who, on information and belief, has served as an officer, representative and agent of PERRY GROUP and PERRY ASSOCIATES and who has acted personally to injure the Plaintiff and others in the conspiracy herein described.

127. With the written and oral approval of PERRY and the PERRY GROUP, the CITY, CHIEF, KAMEG and police officers present on December 4, 2002 conspired and went upon the premises of the Complex, for the purpose of depriving, either directly or indirectly, Plaintiffs and the class of persons to which they belong of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of the United States and other authorities, including the Department of Housing and Urban

31

Development, from giving or securing to all persons within Illinois, Kankakee County and the City of Kankakee the equal protection of the laws.

128.     The conspiracy in this case arises from express and implied agreements by and between the PERRY GROUP, PERRY, PERRY ASSOCIATES, on one hand as the owner and developer of the nearby 100-plus acres, and the MAYOR, CITY, KAMEG and the COUNTY, on the other hand to, on information and belief, adopt the most aggressive and overbearing positions possible in relation to the Complex in order to preserve and enhance the property value of the surrounding property owned or operated by the PERRY GROUP, to increase the value of the tax increment financing district to the PERRY GROUP, the CITY and other taxing districts whose income indirectly benefits the CITY and to force the Complex into abandonment or force the TRUST and MANAGER into insolvency.

129.     The purpose of the conspiracy was to cause the abandonment of affordable housing at the Complex and open a pathway to development more in accord with the development contemplated by the zoning and tax increment financing approved for the immediate area in the vicinity of the Northeast quadrant of the intersection of Interstate 57 and Court Street.

130.     Additionally, the purpose of the conspiracy was to force the "animals", as PERRY has referred to tenants and guests of tenants at the Complex, to relocate because PERRY GROUP, PERRY, the MAYOR and the CITY did not believe a population of minority residents proximate to the 100-plus acre development was conducive to the attainment of goals and objectives behind the zoning and tax increment financing district approved for the 100-plus acres.

131.     In light of the conspiracy set forth above, and as a result of one or more of the noted conspirators causing or purposefully omitting acts in furtherance of the object of such conspiracy,

32

each conspirator is liable to Plaintiffs because each of the Plaintiffs was injured in his or her person and his or her enjoyment of property and each of the Plaintiffs has been deprived of having and exercising rights or privileges of citizens of the United States regardless of race or color.

WHEREFORE, the Plaintiffs SON and DAUGHTER through CARLA SAULSBURY, as their next friend and for the benefit of her minor children, and CARLA SAULSBURY respectfully request that this Honorable Court enter a judgment against the PERRY GROUP, PERRY ASSOCIATES, PERRY, MAYOR, CITY, COUNTY, CHIEF, KAMEG and officers MARTIN, MALLANDINE, PASEL and MARCOTTE as well as the UNKNOWN OFFICERS, jointly and severally, providing substantially as follows:

A.   Enjoining the CITY, COUNTY, KAMEG as well as their officers from taking or omitting any action in an effort to retaliate against Plaintiffs or any other person in their family for filing this suit;

B.   Enjoining the CITY, COUNTY and KAMEG as well as their officers from acting pursuant to the Agency Agreement and acting pursuant to any revision of such agreement without receiving the advance approval of this Court;

C.   Enjoining the CITY, COUNTY and KAMEG as well as their officers from conducting the ongoing stops and searches (pat-down, interrogations and unit entries) without warrant and without probable cause;

D.   Enjoining the CITY, COUNTY and KAMEG as well as their officers from entering upon common areas other than paved parking surface with their vehicles;

E.   Mandatorily imposing upon the CHIEF, OFFICER, CITY, COUNTY and KAMEG training, education and other requirements with the goal of enhancing the knowledge

33

of racial matters and relations and betting the skills of officers within CITY and COUNTY law enforcement relating to interracial cooperation, including but not limited to a requirement that the CITY, COUNTY and KAMEG law enforcement agencies obtain certification from a recognized and reliable law enforcement certification organization such as CALEA;

F.   Compensatory damages, paid to Plaintiffs by the PERRY GROUP, PERRY ASSOCIATES, PERRY, CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to compensate SON and DAUGHTER for their respective injuries;

F.   Punitive damages paid to Plaintiffs by the PERRY GROUP, PERRY ASSOCIATES, PERRY, CITY, MAYOR, KAMEG, CHIEF and listed officers in a reasonable amount which the trier of fact deems sufficient to deter future illegal conduct;

G.   Punitive damages paid to Plaintiffs by PERRY GROUP, PERRY ASSOCIATES, PERRY, MAYOR, CHIEF and the listed officers in their personal capacities in a reasonable amount which the trier of fact deems sufficient to deter the conduct of these individuals; and

H.   Payment by the PERRY GROUP, PERRY ASSOCIATES, PERRY, COUNTY, CITY, MAYOR, KAMEG, CHIEF and listed officers of Plaintiffs' attorneys' fees, witness fees and costs of this action, in an amount to be set forth in an affidavit from the attorney(s) for Plaintiffs at the conclusion of this matter.

## COUNT SIX–COMMON LAW BATTERY

(Children v. MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG)

34

132. Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 71 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 132 of this Count Six.

133. The police officers present on December 4, 2002 intended to and did cause great bodily harm to the two adults in the hallway upon whom they inflicted physical abuse.

134. This intent is transferred to SON and DAUGHTER who were hit by pepper spray.

135. SON and DAUGHTER suffered a battery at the hands of the CITY and police officers present on December 4, 2002.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an award of damages in their favor in an amount commensurate to the harm caused.

## COUNT SEVEN–INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Children v. MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG)

136. Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 71 and Paragraph 132 through Paragraph 135 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 136 of this Count Seven.

137. Defendants' conduct noted in this Complaint, specifically that which occurred on December 4, 2002 was truly extreme and outrageous in that it far exceeded all reasonable boundaries.

138. SON and DAUGHTER were clearly in the zone of harm and both suffered physical contact sufficient to cause extreme emotional distress the treatment of which CARLA is not sufficiently able to afford.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an award of

damages in their favor in an amount commensurate to the harm caused.

## COUNT EIGHT–NEGLIGENT SUPERVISION, HIRING AND PROMOTION

### (Children v. CITY, CHIEF, SHERIFF and KAMEG)

139. Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 138 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 139 of this Count Eight.

140. The CITY, the CHIEF and KAMEG were agents of the TRUST and MANAGER in that they, on information and belief, obtained some purported authority over freedom of movement of third persons who were on the Complex grounds or within the Complex buildings.

141. As agents of the TRUST and MANAGER, the CITY, the CHIEF and KAMEG owed the tenants and guests of tenants the same duty of reasonable supervision and operations at the Complex and within the law, acting within the scope of the agency without creating undisclosed risks or creating risks which they failed to educate citizens in avoiding or harming occupants or invitees to the Complex during the course of their agency.

142. The CITY and KAMEG knowingly and wilfully permitted, recommended and approved promotions of one or more members of the CITY's police force who had known records of police brutality and false arrest to positions of management within the CITY's police department and within KAMEG.

143. On information and belief, neither the CITY, the COUNTY, the CHIEF, the SHERIFF nor KAMEG sufficiently sought training or adequate supervision of one or more of its promoted officers or officers assigned to KAMEG.

144. On information and belief, despite complaints from TRUST and MANAGER over

36

their handling of the Agency Agreement and the numerous unwarranted searches without probable cause, neither the CITY, the COUNTY, the CHIEF, the SHERIFF nor KAMEG sufficiently sought training or adequate supervision of one or more of the officers assigned to KAMEG in relation to how the officers would operate under the Agency Agreement.

145. On information and belief, despite complaints from medical professionals at Provina St. Mary's Hospital about the number of battered men and women they treated, neither the CITY, the COUNTY, the CHIEF, the SHERIFF nor KAMEG sufficiently sought training or adequate supervision of one or more of the officers assigned to KAMEG in relation to the handling of minorities, the handling policing of affordable housing areas and the handling of appropriate arrest or search and seizure methods.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an award of damages in their favor in an amount commensurate to the harm caused.

## COUNT NINE–SECTION 1983 FAILURE TO TRAIN & DISCIPLINE

### (Children v. MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG)

139-145. Plaintiffs incorporate by reference each allegation of Paragraph 139 through Paragraph 145 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 139 through Paragraph 145 of this Count Eleven.

146. Defendants MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG had and have an official policy or custom in relation to the Complex whereby they encourage its officers to display force, confidence and an overbearing nature that includes harassment, domination and abuse of rights through the following tactics raised in this Complaint.

147. Defendants MAYOR, CITY, CHIEF, COUNTY, SHERIFF and KAMEG had and

have an official policy or custom in relation to the operations of KMEG and KMEG officers whereby it encouraged its officers to display force, confidence and an overbearing nature that includes harassment, domination and abuse of rights through similar tactics, particularly in relation to actions occurring in public areas where KAMEG specifically sought to humiliate residents of the Complex and place them in great fear for their own personal safety in their residences.

148.    Defendants MAYOR, CITY , CHIEF, COUNTY, SHERIFF and KAMEG all failed to obtain, require or provide adequate training and certification for officers involved in patrolling the Complex or involved in KAMEG operations at the Complex.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an award of damages in their favor in an amount commensurate to the harm caused, punitive damages and an award of attorneys fees, expenses and court costs.

## COUNT TEN–NEGLIGENCE IN USE OF PEPPER SPRAY

### (Children v. CITY and KAMEG)

149.    Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 71 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 149 of this Count Ten.

150.    CITY and KAMEG officers observed SON and DAUGHTER in the front entry and in the hallway of the Building before they entered the Building.

151.    CITY and KAMEG officers observed SON and DAUGHTER in the front entry of the Building after they entered the Building and before they ascended the rear stairwell.

152.    CITY and KAMEG officers observed Plaintiff in the hallway of the Building after they ascended the rear stairwell and confronted Burkes and the Second Person on the landing outside

38

Plaintiff's home.

153.    CITY and KAMEG officers knew that SON and DAUGHTER were bystanders who were obviously minors on December 4, 2002.

154.    CITY and KAMEG officers are specifically trained in the use of pepper spray.

155.    On information and belief, part of the training noted in Paragraph 154 advised against the use of pepper spray in enclosed areas or in close proximity to an attacker, an arrestee or a bystander.

156.    CITY and KAMEG officers owed SON and DAUGHTER a duty of reasonable care in that officers were required by law to exercise their authority in accordance with law and to use only such force as they are privileged to use under the circumstances of December 4, 2002.

157.    CITY and KAMEG officers had a duty not to create an unreasonable risk of harm to innocent bystanders such as SON and DAUGHTER.

158.    CITY and KAMEG officers committed unpermitted and nonprivileged physical contact with Plaintiffs through their use of hands to force Plaintiffs to locations selected by officers and by the use of pepper spray to force Plaintiffs to remain in such locations and to remain away from a point of observation of all of the police activity involving a man the officers were beating.

159.    CITY and KAMEG officers also understood they occupied significant portions of the space in the hallway and that, in the use of the pepper spray, officers would certainly not discharge it directly upon themselves rather choosing to spray it in the direction of others.

160.    CITY and KAMEG officers understood that by discharging the pepper spray in the direction of Burkes that they would injure Burkes and others in the hallway and proximate thereto by reason of their training.

39

161.   CITY and KAMEG officers also knew that they occupied an elevated and confined space with little or no ventilation and that their use of the pepper spray in such a confined location would have a drastic effect on occupants of the hallway and tenants in nearby apartment units.

162.   CITY and KAMEG officers disregarded the certainty of injuries that would result from the discharge of pepper spray in the confined area of the hallway.

163.   CITY and KAMEG officers violated their duty not to create an unreasonable risk of harm to SON and DAUGHTER.

164.   CITY and KAMEG officers violated their duty not to use excessive force in a fashion that would injure SON and DAUGHTER.

165.   CITY and KAMEG officers, as co-actors and joint tortfeasors, violated these duties by restraining SON and DAUGHTER to their respective locations and discharging pepper spray.

166.   SON and DAUGHTER suffered injury of a visual, nasal and respiratory nature.

167.   SON and DAUGHTER suffered a trauma and stress that has caused them harm and injury of a psychological and emotional nature.

168.   SON and DAUGHTER were foreseeable potentially-injured parties prior to the use of the pepper spray.

169.   CITY and KAMEG officers proximately caused the physical and emotional suffering of SON and DAUGHTER through their conduct alleged herein on December 4, 2002.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an award of damages in their favor in an amount commensurate to the harm caused.

## COUNT ELEVEN–PREMISES LIABILITY

(Children v. Trust, Manager, City and KAMEG)

170.     Plaintiffs incorporate by reference each allegation of Paragraph 1 through Paragraph 169 of this Complaint as though the same allegations were restated and repeated verbatim in Paragraph 170 of this Count Eleven.

171.     On and prior to December 4, 2002, the TRUST and MANAGER each owed SON and DAUGHTER a duty of reasonable care to discover that the KAMEG officers conducting surveillance at the Complex were committing assaults, batteries, false arrests, and other torts, including constitutional violations such as the use of excessive force in effectuating false or valid arrests.

172.     On and prior to December 4, 2002, the TRUST and MANAGER each owed SON and DAUGHTER a duty to protect them against the harms noted in Paragraph 171 in light of the failure of TRUST and MANAGER to warn Plaintiffs of the harm or risk of harm and inform them of how Plaintiffs could avoid the harm to SON and DAUGHTER.

173.     Rather than satisfy this duty, TRUST and MANAGER continued their policy and procedure of blindly adhering to an illegal Agency Agreement with the CITY and/or its police force or with KAMEG to permit police to enforce certain loitering and trespass laws in cooperation with TRUST and MANAGER.

174.     TRUST and MANAGER had specific knowledge of several incidents of violence involving police, several incidents of police efforts involving the use of excessive force and several reports of police misconduct in pressuring residents and their invitees into unconstitutional and nonconsensual searches of their persons, apartments and belongings.

175.     TRUST and MANAGER knew of pressures the City applied to them in their

41

operation of the Complex and they knew the City's pressures extended into areas of local ordinance enforcement and general law enforcement and TRUST even filed suit in this regard.

176.    Despite all of this knowledge, TRUST and MANAGER never examined, evaluated or re-evaluated their entry into the Agency Agreement or considered a lawful policing arrangement with the CITY and KAMEG.

177.    As a direct and proximate result of this omission of duty, TRUST and MANAGER continued to permit the CITY and KAMEG to direct officers to illegally apply loitering and trespassing laws, to threaten Complex management employees who disclosed the police abuses, to deny residents and their invitees their rights to be free of unreasonable searches and seizures and to avoid police brutality.

178.    Moreover, the foreseeability of criminal and tortious activity by the CITY and KAMEG officers increased with every day the Agency Agreement remained effective.

179.    In light of the acquiescence and approval of the police misconduct shown by TRUST and MANAGER, and as a result of the failure to warn Plaintiffs of the misconduct and how they could avoid injury from it, TRUST and MANAGER violated their duties to prevent harm to the Plaintiffs resulting from police misconduct occurring in the course of the CITY's and KAMEG's exercise of excessive force and exceedances of authority.

180.    TRUST and MANAGER not only violated their duties to investigate or warn but they also provided the CITY and KAMEG with authority to continue exercising unconstitutional authority, exerting unlawful pressure and utilizing excessive and unlawful force to its residents and their invitees.

181.    SON and DAUGHTER were mere innocent bystanders who took or omitted no action

42

that would cause them to become the subject of the unwarranted practices of CITY and KAMEG officers or cause them to become the subject of the continued use and application of excessive force by CITY and KAMEG officers.

182.    TRUST and MANAGER had several means available to them to provide other protections to SON and DAUGHTER when they were located in the limited common areas of the Complex such as maintaining otherwise inoperable door locks and security systems which included video surveillance but they did not so maintain these locks and systems.

183.    TRUST and MANAGER also had several opportunities to reign in the CITY and KAMEG officers when TRUST and MANAGER learned of beatings, a questionable police shooting of a suspect, unconstitutional searches and attempted unconstitutional searches and seizures and even responded sharply to City and KAMEG insinuations about threats made by their officers to force employees of MANAGER's agent to cease their criticism of and complaining about illegal CITY and KAMEG law enforcement tactics.

184.    SON and DAUGHTER suffered direct physical and psychological injury as noted above resulting from the failure of the TRUST and MANAGER to adequately warn or prevent harm.

185.    Moreover, the CITY and KAMEG, as agents of the TRUST and MANAGER exercising their purported powers of control over residents and guests at the Complex owed the same duties to warn of a risk of harm–even if created by the actions of officers–that put the Plaintiffs at risk.

186.    The CITY and KAMEG therefore proximately caused harm to SON and DAUGHTER by failing to warn CARLA of steps required to be taken to avoid aggressive police action, brutality, the improper use of pepper spray and other harms evident on December 4, 2003.

43

WHEREFORE, SON and DAUGHTER, through their next friend, respectfully request that this Honorable Court enter an award of damages in their favor in an amount commensurate to the harm caused.

## COUNT TWELVE–INJUNCTION AGAINST LOITERING ENFOREMENT

### (Plaintiffs v. CITY, KAMEG, TRUST and MANAGER)

187.  As noted above and reflected in Exhibit "A", TRUST and MANAGER have, on information and belief, entered into an Agency Agreement with the CITY and KAMEG which purports to grant the CITY's police officers control over the freedom of movement of tenants and guests.

188.  The CITY, with the approval of the County's duly elected State's Attorney, has adopted an official policy of the CITY and COUNTY, and thus KAMEG, that the Agency Agreement permits the CITY officers to stop persons for loitering about when no illegal conduct is apparent.

189.  The CITY, with the approval of the County's duly elected State's Attorney, has adopted an official policy of the CITY and COUNTY, and thus KAMEG, that the Agency Agreement permits the CITY officers to arrest persons for criminal trespass when the owner of a rental or other property has not prohibited the arrestee from coming onto the property and the sole decision that the arrestee should not be on the property resides in the police or another public official.

190.  Plaintiffs have a reasonable expectation that the CITY, COUNTY and KAMEG will continue to assert a right to stop, search and arrest people for loitering.

191.  Plaintiffs have a reasonable expectation that the CITY, COUNTY and KAMEG will continue to assert a right to arrest people for trespass when the TRUST and OWNER have not barred

44

the arrestee from entering the Complex.

192.     Plaintiffs have no adequate remedy at law to remedy this illegal agreement and the unconstitutional interpretation of the Agency Agreement.

193.     The circumstances of stops, searches and arrests based on loitering and trespass are likely to repeat themselves continuously.

194.     The enforcement of purported loitering and trespass laws is not contemplated by federal or state law.

195.     The balance of the equities in this case favors a preference for preservation of rights under the United States Constitution and the 1970 Illinois Constitution.

196.     Plaintiffs' right to move about freely without coercion or threat of arrest or injury is a clear right to which there is no question under City of Chicago v. Morales.

* * * * * * * * * *

WHEREFORE, SON and DAUGHTER, through their next friend, as well as CARLA SAULSBURY, respectfully request that this Honorable Court enter a judgment declaring the Agency Agreement invalid and unconstitutional, declaring the acts of the police to enforce loitering and trespass laws unconstitutional and permanently enjoining efforts in pursuit of the objectives of the Agency Agreement to the extent it seeks to control the movement about of persons who have not agreed to that agreement.

Respectfully Submitted,

JANE DOE and JOHN DOE, by their mother and next friend, and CARLA SAULSBURY

By: _____

One of Plaintiffs' Attorneys

Mark W. Daniel, Esq.
RATHJE & WOODWARD
300 E. Roosevelt Road, Suite 300
Wheaton, IL 60187
(630) 668-8500

46

## KANKAKEE CITY POLICE DEPARTMENT AGENCY AGREEMENT

*This agreement, made and executed this **1ˢᵗ** day of **January**, 2000, by **Raberta Warwick (Agent)** of the **200 Crestlane**, as Principal/Owners, and by **Deputy Chief Larry Regnier**, as agent of the City of Kankakee, Illinois, a Municipal Corporation, provides as follows:*

### SECTION 1 – PURPOSE OF AGREEMENT

*It is recognized that in certain situations, the use of Kankakee City Police Officers to control certain activities on common areas of private property located within the Corporate Limits of the City of Kankakee being conducted by non-residents of parties not otherwise entitled to possession of the property, may be desirable and necessary in order to preserve and protect the health, safety, and welfare of the public.*

### SECTION 2 – POWER AND AUTHORITY

*A.     I, **Roberta Warwick**, as Principal/Owner, do hereby authorize and grant to the City of Kankakee as my agent, the power to control non-resident persons who enter and remain upon common areas of all property located at **200 Crestlane**, Kankakee, Illinois.*



**PLAINTIFF'S EXHIBIT**
A

B.    *The City of Kankakee specifically has the power to approach persons located on the property and to order them to leave the property and not to return if they are non-residents. The City of Kankakee shall also have the power to cause a non-resident to be arrested if they refuse to leave the property. The City of Kankakee, as my agent, shall also have the power to sign criminal complaints against non-residents, at its election.*

C.    *I, **Roberta Warwick**, as Principal/Owner, hereby agree that I will cooperate with the City of Kankakee in any criminal prosecutions that may arise from the City of Kankakee's exercise of the authority granted by this agreement.*

D.    *The City of Kankakee, as agent, does hereby authorize its police officers to control non-resident authorized persons entering upon the common areas of property located at **200 Crestlane**, Kankakee, Illinois. The police officers are hereby authorized to approach persons located on the property to determine if they reside or have been legally invited on the property. Said police officers are empowered to arrest persons who refuse to leave or who leave and return without permission of the Principal/Owner or a resident at a later date, and said police officers are also empowered to sign criminal complaints against the individuals on behalf of the Principal.*

### SECTION 3 - EFFECTIVE DATE OF AGREEMENT

A.  This agreement shall be in full effect and legally binding upon such time as signed and certified by each party.

B.  The Chief of Police of the City of Kankakee will retain the original signed agreement and will be responsible for circulating such agreement for purposes of signature and record.

### SECTION 4 - TERMINATION OF AGREEMENT

A.  This agreement shall remain in full force and effect until terminated in writing by either party and said written notice of the termination is delivered to the other party.

B.  In the event that the Principal sells or otherwise conveys their interest in the property, they shall notify the City of the fact of the sale or conveyance and this agreement shall thereupon be terminated at the time of the sale or other conveyance unless sooner terminated by either party.

_____          _____
Principal                                 Agent

_____          _____
Witness                                   Witness

Home address of PRINCIPAL _200 Crest Lane  Kankakee, Il 60901_

Home telephone number of PRINCIPAL _815- 9897260_

200 Crest Lane Ave.
Kankakee, IL 60901

# Crestview Village Apartments

February 24, 00

Kankakee City Police Department

Dear Sir or Madam:

This letter is to inform you of the changes at Crestview Village Apartments and to also give you our emergency numbers for your records .The new management company that took over is Vantage Professional Property Management Company. Here are the numbers

Pager #1 Maintenance – 348-1417

Pager #2 Manager   / 533-0193

Home /937-4665      cell /260/7023

If you have any questions please feel free to call our office at 939-7220.

Sincerely,

Cherie` Billings



**Bob Warwick**
Asset Manager

P.O. Box 431 Morris, IL 60450-0431
888 670-7080   xt. 402
Mobile 815-440-0823    Fax 815-942-5748

V A N T A G E   P R O P E R T Y   M A N A G E M E N T

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**DOCKETED**
DEC 0 5 2003

JANE DOE and JOHN DOE, minors by their )
mother and next friend, CARLA SAULSBURY, )
and CARLA SAULSBURY, an individual, )
        Plaintiffs, )

**03C 8786**

v. )
    )
    Ci **JUDGE AMY ST. EVE**

THE COUNTY OF KANKAKEE, a body )
politic and corporate, CITY OF KANKAKEE, a )
municipal corporation, KANKAKEE AREA )
METROPOLITAN ENFORCEMENT GROUP, a )
joint venture of municipalities and bodies politic or )
an association of such entities, TIMOTHY )
BUKOWSKI, in his official and personal )
capacities, MICHAEL KINKADE, in his official )
and personal capacities, AUSTIN BANK OF )
CHICAGO, as Trustee U/T/A dated July 20, 1988 )
(Tr. No. 6431), CRESTVIEW VILLAGE )
APARTMENTS, L.P., an Illinois limited )
partnership, DONALD GREEN, in his official and )
personal capacities, KENNETH MALLANDINE, )
in his personal capacity, JACK JOHNSTON, in his )
personal capacity, CHAD GESSNER, in his )
personal capacity, PATROLMAN MARTIN, in his )
personal capacity, LIEUTENANT MARCOTTE, in )
his personal capacity, PERRY GROUP, LTD., an )
Illinois limited partnership, TONY PERRY & )
ASSOCIATES, INC., an Illinois corporation, )
TONY PERRY, an individual, and OTHER )
UNKNOWN PERSONS, )
        Defendants. )

District Judge:

Magistrate SIDNEY I. SCHENKIER

**JURY TRIAL DEMANDED**

FILED-EDA
03 DEC -4 PM 3:22
U.S. DISTRICT COURT CLERK

---

## JURY DEMAND

    Plaintiffs, JANE DOE and JOHN DOE, minors by their mother and next friend, CARLA SAULSBURY and CARLA SAULSBURY, an individual, hereby demand a trial by jury on all issues so triable.

1-1

Respectfully Submitted,

JANE DOE and JOHN DOE, minors by their mother and next
friend, CARLA SAULSBURY and CARLA SAULSBURY,
an individual

By: _____
　　　　　One of their Attorneys

Mark W. Daniel, Esq.
Rathje & Woodward
300 E. Roosevelt Road, Suite 300
P.O. Box 786
Wheaton, IL 60189
630-668-8500

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

DOCKETED
DEC 0 5 2003

## Civil Cover Sheet  03C  8786

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

JUDGE AMY ST. EVE
MAGISTRATE SIDNEY I. SCHENKIER

**Plaintiff(s):** Jane Doe and John Doe, minors by their mother and next friend, Carla Saulsbury and Carla Saulsbury, an Individual

**Defendant(s):** THE COUNTY OF KANKAKEE, a body politic and corporate, CITY OF KANKAKEE, a municipal corporation, KANKAKEE AREA METROPOLITAN ENFORCEMENT GROUP, a joint venture of municipalities and bodies politic or an association of such entities, TIMOTHY BUKOWSKI, in his official and personal capacities, MICHAEL KINKADE, in his official and personal capacities, AUSTIN BANK OF CHICAGO, as Trustee U/T/A dated July 20, 1988(Tr. No. 6431), CRESTVIEW VILLAGE APARTMENTS, L.P., an Illinois limited partnership, DONALD GREEN, in his official and personal capacities, KENNETH MALLANDINE, in his personal capacity, JACK JOHNSTON, in his personal capacity, CHAD GESSNER, in his personal capacity, PATROLMAN MARTIN, in his personal capacity, LIEUTENANT MARCOTTE, in his personal capacity, PERRY GROUP, LTD., an Illinois limited partnership, TONY PERRY & ASSOCIATES, INC., an Illinois corporation, TONY PERRY, an individual, and OTHER UNKNOWN PERSONS

County of Residence: Kankakee

County of Residence: Kankakee

Plaintiff's Atty:  Mark W. Daniel
Rathje & Woodward
300 E. Roosevelt Road, Suite 300, Wheaton, IL 60187
630-668-8500

Defendant's Atty:

FILED-FDA
03 DEC -4 PH 3:06

---

II. Basis of Jurisdiction:    **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties (Diversity Cases Only)
Plaintiff:- **N/A**
Defendant:- **N/A**

Case: 1:03-cv-08786 Document #: 1 Filed: 12/04/03 Page 55 of 55 PageID #:56

IV. Origin :                    **1. Original Proceeding**

V. Nature of Suit:              **440 Other Civil Rights**

VI.Cause of Action:            **42 U.S.C.§§1983, 1985, 1986. 42 U.S.C. §§ 3604, 3613 and various
                               state law causes of action**

VII. Requested in Complaint
        Class Action:**No**
       Dollar Demand:
       Jury Demand:**Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date:  12-4-03

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it.
Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size
in your browser display to make the form print properly.**                    Revised: 06/28/00