# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8786 | **DATE** | 7/7/2004 |
| **CASE TITLE** | Doe vs. County of Kankakee, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss plaintiffs' amended complaint (R. 19-1) is granted in part and denied in part. The Court grants Defendant County's motion to dismiss Counts I, II, VI, VII, VIII, and IX and denies the motion with respect to Counts III, IV, and V. The Court grants Defendant Sheriff's motion to dismiss Counts VI, VII, VIII, and IX and denies the motion to dismiss Count IV. Finally, the Court grants Defendant Curwick's motion to dismiss Counts III, V, and VIII and denies the motion to dismiss Count IV. The Court directs Plaintiffs to amend their complaint in accordance with this opinion, striking claims against "Unknown Defendants."

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANE DOE and JOHN DOE, minors by their )
mother and next friend, CARLA SAULSBURY, )
and CARLA SAULSBURY, an individual, )
)
        Plaintiffs, )   No. 03 C 8786
)
v. )
)
THE COUNTY OF KANKAKEE. et al., )
)
        Defendants. )

DOCKETED
JUL 0 8 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge

Plaintiffs Jane Doe ("Daughter"), John Doe ("Son"), and Carla Saulsbury filed an amended complaint against Defendants County of Kankakee ("County"), Sheriff Timothy Bukowski ("Sheriff"), Charles Curwick, Chad Gessner, and others, alleging excessive force by County, Sheriff, and others in violation of 42 U.S.C. § 1983 (Count I), false arrest by County and others in violation of 42 U.S.C. § 1983 (Count II), discrimination in rental housing by County, Curwick, and others in violation of 42 U.S.C. § 3604 (Count III), neglect to prevent violation by County, Sheriff, Curwick and others in violation of 42 U.S.C. § 1986 (Count IV), conspiracy by County, Sheriff, Curwick and others in violation of 42 U.S.C. § 1985 (Count V), common law battery by County, Sheriff, and others (Count VI), intentional infliction of emotional distress by County, Sheriff, and others (Count VII), negligent supervision, hiring, and promotion by County, Sheriff, Curwick, and others (Count VIII), and failure to train and discipline by County, Sheriff, and others in violation of 42 U.S.C. § 1983 (Count IX). These allegations arise mainly from events on December 4, 2002 and January 1, 2003. (R. 17-1, Am. Compl. ¶¶ 54-71.) Defendants

County, Sheriff, Curwick, and Gessner (collectively "the County Defendants") have moved to dismiss the amended complaint pursuant to Rule 12(b)(6). For the reasons stated herein, Defendants' motion is granted in part and denied in part.

## BACKGROUND

This Court takes the following allegations from the amended complaint as true for the purposes of the motion to dismiss. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

Plaintiffs Daughter and Son are minors and children of Plaintiff Saulsbury. (R. 17-1, Am. Compl. 6.) Plaintiffs live in a collection of apartment buildings known as Crestlane Apartments, located in Kankakee, Illinois (the "Complex"). (*Id.* ¶ 5, 31.) Defendant County is a body politic and corporate in the State of Illinois, and Defendants Sheriff, Curwick, and Gessner are law enforcement officers employed by Defendant County's sheriff's department. (*Id.* ¶¶ 8-9; R. 26-1, Pls.' Mem. in Opp'n to Mots. to Dismiss at 1-2.) Other Defendants named in the lawsuit include the City of Kankakee ("City"); Michael Kinkade, the Chief of Police of Defendant City ("Chief"); Donald Green, the Mayor of the City ("Mayor"); Austin Bank of Chicago ("Trust"), the owner of the Complex; and Crestview Village Apartments, L.P., the management firm for the Complex ("Manager"). (*Id.* ¶¶ 10-15.) Defendant Kankakee Area Metropolitan Enforcement Group ("KAMEG") is a joint venture of municipalities and is composed of members of law enforcement from both the City and County including, but not limited to, Defendants Sheriff, Curwick, Gessner. (*Id.* ¶¶ 9, 16-17.) Finally, Plaintiffs have designated as Unknown Defendants any additional potential defendants arising from the events of December 4, 2002 whose identity may become known in the future. (*Id.* ¶ 21.)

## I. Crestlane Apartment Complex

The Complex consists of multiple residential units in several buildings and has at least

2

three open areas, a playground, parking lot, and several common areas used by residents and their acquaintances. (*Id.* ¶¶ 31-34.) Most of the tenants of the Complex receive support from the United States Department of Housing and Urban Development. (*Id.* ¶ 35.) Most residents of the Complex are African-American. (*Id.* ¶ 36.)

## II.   Law Enforcement at the Complex

The main purpose of KAMEG is to combat the illegal drug trade and other crimes occurring in local jurisdictions. (*Id.* ¶ 38.) KAMEG has, through policy and procedure, used aggressive methods of law enforcement, including the prohibition of loitering for lawful purposes, conducting arrests without probable cause or warrant, random searches, and excessive force in making arrests. (*Id.* ¶¶ 39, 44, 52.) KAMEG employed these practices in low-income housing throughout the area, including the Complex. (*Id.* ¶ 39.)

On January 1, 2000, Defendant City entered into an agreement ("Agency Agreement") with Defendants Trust and Manager giving authority to Defendant City to control any non-residents found in the common areas of the Complex. (*Id.*, Ex. A.) Defendant City executed other agreements of this type with rental housing units in the City of Kankakee. (*Id.* ¶ 50.)

## III.  Plaintiffs' Injuries

On December 4, 2002 around 8:00 p.m., Daughter, Son, other residents, and guests were located in a hallway near Plaintiffs' apartment when they observed several KAMEG officers enter and instruct at least three persons to leave the common area. (*Id.* ¶ 57-58.) The officers attacked one man as he attempted to produce identification. (*Id.* ¶ 59.) While this was occurring, one or more officers threatened Plaintiff Daughter and instructed her not to move. (*Id.* ¶ 60.) At least one officer then discharged pepper spray in Daughter's vicinity, affecting her eyes, balance, and breathing. (*Id.* ¶ 61.) Son, seeking to avoid the pepper spray, entered

3

Plaintiffs' apartment and there encountered an unknown man whom the officers had placed in the apartment. (*Id.* ¶ 62, 67.)

Plaintiffs Son and Daughter suffered pain and emotional distress during the attack and since the incident have suffered from emotional distress and increased difficulty in feeling secure in their home. (*Id.* ¶¶ 64, 68.) Additionally, the incident impacted Plaintiff Daughter's relationships with friends and in school. (*Id.* ¶ 65.)

Finally, the amended complaint alleges the presence of at least one law enforcement officer at an incident on January 1, 2003 during which someone was detained, interrogated, and searched outside of Plaintiffs' apartment. (*Id.* ¶¶ 16, 84.) The amended complaint does not, however, allege the specific names of those present nor does it allege the presence of or harm to any of the Plaintiffs. Only in subsequent pleadings is Defendant Gessner's name specifically connected with the incident on that date. (19-2, Defs.' Mem. in Supp. of Their Mot. to Dismiss at 8 n.5.; 26-1, Pls.' Mem. in Opp'n to Mots. to Dismiss at 5; 28-1; Reply to Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 5.)

## LEGAL STANDARDS

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d. 583, 586 (7th Cir. 1989). The Court must view the allegations in the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago,* 330 F.3d 456, 459 (7th Cir. 2003). Consequently, the court may grant the motion to dismiss "only if it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief." *Triad. Assocs., Inc.,* 892 F.2d at 586.

## ANALYSIS

### I. Counts I and II - Excessive Force and False Arrest

In their excessive force (Count I) and false arrest (Count II) claims, Plaintiffs named Defendant County and others, including "Unknown Officers." (R. 17-1, Am. Compl. ¶¶ 53-78.) Plaintiffs argue that, while the complaint does not allege the participation of any County law enforcement officials during the incident at the Complex on the night of December 4, 2002, it is possible that County law enforcement officers were present. Accordingly, Plaintiffs assert that if the Court dismisses Counts I and II with respect to Defendant County, the Court should allow for the naming of one or more of the County Defendants in the future.

#### A. Unknown Officers

Both Plaintiffs and Defendants have acknowledged this Court's directive to disclose all officers present on December 4, 2002 and January 1, 2003 and that counsel for City Defendants and County Defendants have all stated that they are not aware of a County law enforcement presence on those dates. (R. 26-1, Pls.' Mem. in Opp'n to Mots. to Dismiss at 4-5; R. 28-1, Reply to Pls.' Mem. in Opp'n to County Def.' Mot. to Dismiss at 3.) Plaintiffs argue that this disclosure has not been provided under oath, and they must, therefore, maintain claims against "Unknown Officers." (R. 26-1, Pls. Mem. in Opp'n to Mots. to Dismiss at 5.) In support of the use of "Unknown Officers" as defendants, Plaintiffs cite to *Maclin v. Paulson*, 627 F.2d 83 (7th Cir. 1980), wherein a prisoner alleged actionable claims against two arresting officers whose names he did not possess when he filed the complaint. In *Maclin*, the Seventh Circuit reversed the District Court's dismissal of the claims against the officers and held that Maclin did not need to name the defendants until their names could be learned through discovery or the aid of the trial court. *Id.* at 87.

The present case is distinct from *Maclin* in that Maclin alleged specific actions by specific individuals whose names he did not know. In this case, Plaintiffs have merely asserted the possibility that other officers were involved in some manner, the details of which have not been alleged. Maclin alleged a beating, the denial of the right to an attorney, and the coercion of a confession. In contrast, Plaintiffs here have made no specific allegations concerning the actions or even the presence of additional law enforcement personnel. *Id.* at 86-87. The use of "Unknown Officers" does not put any County law enforcement officers or any other officers on notice of suit. Consequently, this Court proscribes the naming of "Unknown Officers" against whom Plaintiffs have not alleged specific wrongdoing.[1]

### B. Injunctive Relief

While Plaintiffs have sought damages and injunctive relief from Defendant City and others for injuries suffered due to the actions of City Police officers on December 4, 2002, Plaintiffs are seeking only injunctive relief from Defendant County. (R. 17-1, Am. Compl. ¶ 71, 78.) Plaintiffs seek to have this Court enjoin Defendants City, County, and KAMEG from their allegedly aggressive law enforcement practices. (*Id.*)

Because Plaintiffs are seeking an injunction and not damages from Defendant County, the Court must decide whether Plaintiffs have adequately alleged a case or controversy for the purpose of standing under Article III of the Constitution that would entitle them to seek injunctive relief. The controlling case in the matter is *Los Angeles v. Lyons*, 461 U.S. 95 (1983). Lyons, a motorist injured after police applied a choke hold during a traffic stop, sought to have the District Court bar the use of choke holds by the City of Los Angeles in situations where the

---

[1] If Plaintiffs develop evidence during discovery that identifies specific officers involved in the alleged incident, Plaintiffs can move to amend their complaint at that time.

6

police are not threatened with deadly force. *Id.* at 97-98. In order to have standing to invoke the jurisdiction of the federal courts, a plaintiff must have sustained an injury or be in immediate danger of sustaining an injury due to the official conduct, and the injury or threat thereof must be "real and immediate," not "conjectural" or "hypothetical." *Id.* at 101-102; *see also Tobin for Governor v. Ill. Bd. of Elections*, 268 F.3d 517, 527-528 (7th Cir. 2001) (describing the many unlikely conditions required for the plaintiff to be in danger of injury during any future elections). In *Lyons*, the Supreme Court held that Lyons' previous exposure to illegal conduct did not demonstrate a present case or controversy for injunctive relief and that Lyons, in order to meet his standing requirement for possible future violations, would have been required to allege either (1) that every police officer would always choke any individual that they encountered during an arrest, questioning, or while issuing a citation or (2) that Los Angeles instructed or authorized its police to use such extreme techniques. *Id.* at 102, 106.

While Plaintiffs' allegations paint an unpleasant picture of life in the Complex, they do not claim that Plaintiffs are in immediate danger of future injury because every law enforcement officer does or will commit constitutional violations at every possible instance during the performance of their duties or because Defendant City or Defendant County ordered or permitted its law enforcement officers to commit constitutional violations at every possible instance. Without such allegations that they likely will be harmed again, Plaintiffs are no more entitled to seek an injunction than other members of the community. *Id.* at 111. A federal court is not the proper forum for evaluating the assertions of those who lack standing and who merely allege that a law enforcement practice is unconstitutional. *Id..* Consequently, Counts I and II are dismissed.

## II. Count III-Discrimination in Rental Housing

Plaintiffs allege a cause of action against Defendants County, Curwick, and others for discrimination in rental housing under 42 U.S.C. § 3604. Subsections (a) and (b), specifically, are the possible sources of Plaintiffs' claims. 42 U.S.C. § 3604 states in part:

It shall be unlawful -

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604 (a)-(b) (2004).

Regarding subsection (a), Plaintiffs allege that after Plaintiff Saulsbury's bonafide offer was made and accepted, Defendants Trust and Manager refused to rent the unit or negotiate concerning the unit without the inclusion of the Agency Agreement. (R. 17-1, Am. Compl. ¶ 80.) Plaintiffs also allege that the Agency Agreement and its tougher law enforcement techniques are discriminatory because they have been employed only in populations composed primarily of racial minorities, non-married families, and those of foreign national origin. *Id.* ¶¶ 88-89; *Cf. Neighborhood Action Coalition v. City of Canton, Ohio*, 882 F.2d 1012, 1016-1017 (6th Cir. 1989) (reversing motion to dismiss and holding that police failure to respond to calls on the basis of neighborhood racial composition is a violation of the Fourteenth Amendment). Finally, Plaintiffs connect Defendant County to the Agency Agreement through their participation in KAMEG. (*Id.* ¶¶ 7, 82, 86, 89.) Plaintiffs have sufficiently pled a cause of action against the Defendant County under 42 U.S.C. § 3604(a). Consequently, the motion to dismiss regarding 42 U.S.C. § 3604(a) for Defendant County is denied.

Plaintiffs next allege that Defendant County, stringently enforcing the Agency Agreement through KAMEG, violated subsection (b) by discouraging the use of the common areas of the Complex. (*Id.* ¶ 90.) The Seventh Circuit has held that subsection (b) applies specifically to services performed by governmental units "such as police and fire protection." *Southend Neighborhood Improvement Ass'n v. County of St. Clair*, 743 F.2d 1207, 1210 (7th Cir. 1984). Plaintiffs assert that Defendants City, County, and KAMEG apply these law enforcement tactics selectively and on the basis of race, color, and national origin. (R. 17-1, Am. Compl. ¶ 91.) Plaintiffs have sufficiently alleged a cause of action under 42 U.S.C. 3604(b), and Defendant County's motion to dismiss is denied.

The allegations contained in Count III of the Amended Complaint contain no specific charges against Defendant Curwick to provide him notice of a violation under Section 3604 against Plaintiffs. (*Id.* ¶¶ 79-106.) Furthermore, in their response to Defendants' motion to dismiss, Plaintiffs do not even attempt to defend their inclusion of Defendant Curwick in the Amended Complaint. Accordingly, the court dismisses Plaintiffs' claim of discrimination in rental housing (Count III) against Defendant Curwick.

Within Count III, Plaintiffs allege that their rights under Section 3617 were violated, but they do not develop this into a separate count. (R. 17-1, Am. Compl. ¶ 94.) Plaintiffs have often used Section 3617 to deal with the type of post-move discrimination described by the Plaintiffs. *See, e.g., Campbell v. Berwyn*, 815 F. Supp. 1138, 1144 (N.D. Il. 1993) (holding that plaintiffs stated a valid claim under § 3617 by alleging that the police discriminated in the provision of police protection by withholding police protection on the basis of race). Plaintiffs have sufficiently stated a claim under this section.

## III. Counts IV and V Neglecting to Prevent Violation and Conspiracy to Interfere with Civil Rights

Counts IV and V allege violations of 42 U.S.C. § 1986, neglecting to prevent a conspiracy, and 42 U.S.C. § 1985, conspiracy to interfere with civil rights. In Count IV, Plaintiffs name Defendants County, Curwick, Sheriff, and others. (R. 17-1, Am. Compl. ¶ 115.) In Count V, Plaintiffs named Defendants County, Curwick, and others who own or have an interest in land adjacent to Plaintiffs' housing complex. (R. 17-1, Am. Compl. ¶¶ 115, 125, 128, 131.) Plaintiffs acknowledge a present inability to restate claims against Defendant Curwick on Count V. (R. 26-1, Pls.' Mem. in Opp'n to Mots. to Dismiss at 17.) Consequently, the claim of conspiracy under § 1983 (Count V) against Defendant Curwick is dismissed.

Plaintiffs allege that the other County Defendants, acting on both economic and racially-biased motives, conspired to force the abandonment of the housing complex (Count V) and did not intervene when others were engaged in the conspiracy (Count IV). (*Id.* ¶¶ 113-115, 129-131.) Of course, the validity of Count IV hinges on the existence of a conspiracy under Count V. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984).

### A. Count V

To state a claim under § 1985(3), a plaintiff must allege (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to United States citizens. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). By alleging that Defendant County conspired, through agreements with other Defendants, to support the use of tactics to aggressively discourage the continued occupation of Plaintiffs' housing complex, that such

10

tactics were employed, and that Plaintiffs were actually harmed, the complaint meets three of the elements. (R. 17-1, Am. Comp ¶¶ 119-122, 127-129, 131.)

Concerning the remaining element of purpose, Defendant County claims that any possible bias toward Plaintiffs was economically driven and not based on race. Plaintiffs allege both economic and racial bias on the part of Defendant County. When there is a possible commingling of motives, a plaintiff must allege at least some racial or class-based discriminatory animus on the part of the alleged conspirators. *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979), *cert. granted in part, rev'd in part on other grounds*, 446 U.S. 754 (1980). By stating that Defendants wanted to preserve and enhance the property value of land belonging to Defendant Perry Group, Ltd. and stating that Defendant County, operating through KAMEG, employed race-based and nationality-based discriminatory law enforcement tactics, Plaintiffs have sufficiently alleged both economic bias and racial animus by Defendant County.[2] (R. 17-1, Am. Comp. ¶¶ 88, 91, 128-130.)

Defendant County alternatively argues that Plaintiffs did not adequately plead the "form and scope" of the alleged conspiracy. *See Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999) (holding that liberal notice pleading rules still require a minimum description of the alleged conduct so that the defendant knows what he has to defend against and so that the court can determine whether the plaintiff has a reasonable basis of suit). The Court

---

[2] Of note in Count V, Plaintiffs explicitly alleged an economic bias on the part of Defendants County, Mayor, KAMEG, City, and Perry Defendants, but two paragraphs later left Defendants County and KAMEG out of the list of those they specifically alleged to have a racial bias. (R. 17-1, Am. Compl. ¶¶ 128, 130.) This Court, obligated to view the allegations in the light most favorable to Plaintiffs, found allegations of discriminatory bias on the part of County Defendants only in other counts, specifically paragraphs 88 and 91, which were incorporated into Count V immediately preceding paragraph 116.

11

disagrees. Plaintiffs' complaint alleges that Defendant County pursued aggressive law enforcement tactics. Plaintiffs allege that Defendant County, through agreements between Perry Defendants and Kankakee municipalities, engaged in enforcement of unwritten loitering rules, intimidation of witnesses, and oppressive searches and seizures of tenants and their guests. (R. 17-1, Am. Compl. ¶¶ 120-123, 128.) These allegations satisfy Plaintiffs' Rule 8 notice requirement. *Ryan,* 188 F.3d at 860. Therefore, Defendant County's motion to dismiss Count V is denied.

### B. Count IV

In order to state a claim under Section 1986, a plaintiff must assert, with regard to the defendant, "(1) knowledge that any of the conspiratorial wrongs are about to be committed, (2) power to prevent or to aid in preventing the commission of those wrongs, (3) neglect to do so, where (4) the wrongful acts were committed, and (5) the wrongful acts could have been prevented by reasonable diligence." *Bell,* 746 F.2d at 1233. Plaintiffs allege that Defendants County, Curwick, Sheriff, and others all knew that constitutional violations would occur given the training of the law enforcement officers. (R. 17-1, Am. Compl. ¶ 113.) Plaintiffs also state that these Defendants had the power to prevent such violations and neglected to do so. (*Id.* ¶¶ 114-115.) Combined with the numerous allegations that such violations occurred, these allegations sufficiently state a cause of action against Defendants County, Curwick, and Sheriff.

For the reasons above, the motion to dismiss Count IV is denied with respect to Defendants County, Sheriff, and Curwick.

### V. Counts VI and VII Common Law Battery and Intentional Infliction of Emotional Distress

Plaintiffs concede that, in the absence of specific allegations that any members of the

12

County of Kankakee law enforcement participated in the events of December 4, 2002, Counts VI and VII fail to state claims against any County Defendants. (R. 26-1, Pls.' Memo. in Opp'n to Mots. to Dismiss at 17.) Consequently, the Court dismisses Counts VI and VII against Defendants County and Sheriff.

## VI. Counts VIII and IX Negligent Supervision, Hiring, and Promotion, and Failure to Train and Discipline

Plaintiffs have alleged that if any County of Kankakee law enforcement officers were involved in aggressive police tactics resulting in injury to Plaintiffs, then Defendants County, Sheriff, and Curwick should be liable for negligent supervision, hiring, and promotion, and a § 1983 failure to train and discipline claim. (*Id.* ¶¶ 139-148.) As discussed above, however, Plaintiffs have not sufficiently alleged the participation of a County of Kankakee law enforcement officer in the events that resulted in their injuries. Failure-to-train theories require the possibility that the officers involved are liable on the underlying substantive claim. *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998) (upholding summary judgment in favor of supervisors and municipality where officers' actions towards disabled inmate were not held unconstitutional). Therefore, Counts VIII and IX against Defendants County, Sheriff, and Curwick are dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants in part County Defendants' motion to dismiss. The Court grants Defendant County's motion to dismiss Counts I, II, VI, VII, VIII, and IX, and denies the motion with respect to Counts III, IV, and V. The Court grants Defendant Sheriff's motion to dismiss Counts VI, VII, VIII, and IX, and denies the motion to dismiss Count IV. The Court grants Defendant Curwick's motion to dismiss Counts III, V, and VIII, and denies the motion to dismiss Count IV. Finally, this Court directs Plaintiffs to amend their complaint in accordance with this opinion, striking claims against "Unknown Defendants."

Dated: July 6, 2004            ENTERED

                               _____
                               AMY J. ST. EVE
                               United States District Judge